MOORE, J.
11 After jury selection, the defendant and the state reached a plea agreement with a 10-year sentence cap. However, the trial court rejected the agreement. The defendant conferred with his attorney and decided to plead guilty as charged to three offenses, including possession with intent to distribute MDMA (Ecstasy) (Count One), contrary to La. R.S. 40:966(A)(1); conspiracy to distribute MDMA (Ecstasy) (Count Two), contrary to La. R.S. 40:979 and 40:966; and, aggravated flight from an officer (Count Three), contrary to La. R.S. 14:108.1(C), in exchange for the state’s agreement not to prosecute him as a fourth felony offender. Subsequently, the court sentenced Dubose to consecutive maximum sentences at hard labor totaling 47 years imprisonment, including 30 years and a fíne of $10,000.00 for Count One, 15 years for Count Two, and two years for Count Three, all without benefit of probation, parole, or suspension of sentence, and with credit for time served. Additionally, the court ordered that these sentences be served consecutively to Dubose’s existing federal sentence of 140 months. Dubose’s motion to reconsider sentence, filed on September 22, 2010, was denied on December 18, 2012. For the following reasons, we affirm, as amended.
FACTS
On October 7, 2008, Ouachita Parish Deputy Stan Felts stopped a 1999 Crown Victoria for improper lane usage on 1-20 in the Monroe area near mile marker 107. When he approached the vehicle, the deputy smelled the odor of burnt marijuana. The driver of the vehicle was Shakeba Williams, but the vehicle was registered to the defendant, who was the sole | zpassenger in the vehicle. Neither Williams nor the defendant had a valid driver’s license.
*615 Deputy Felts obtained consent to search the vehicle from both occupants. After the occupants were removed from the vehicle, the deputy searched the interior. When he disengaged or “popped” the trunk lock, Mr. Dubose began to act extremely nervous. He asked if he could retrieve his cell phone from inside the vehicle. Felts denied the request, but the defendant suddenly jumped into the driver’s seat and sped off onto 1-20 forcing two vehicles off the road.
A high-speed chase ensued, with the defendant exiting 1-20 into West Monroe. The West Monroe Police Department set up a spike strip across a street, which punctured three tires on defendant’s vehicle. The chase continued until officers were able to ram the vehicle, stopping him.
The defendant was taken into custody. A search of the trunk revealed a Fruit Loops cereal box containing approximately 4800 tablets of suspected Ecstasy. The defendant admitted that he had transported the drugs from Texas to Monroe for distribution. The North Louisiana Crime Laboratory later determined that the tablets were, in fact, 3, 4-Methylenedioxy-methamphetaimine (MDMA), commonly referred to as Ecstasy or methamphetamine.
For these acts, the defendant was charged with both federal and state criminal offenses. On January 30, 2009, the defendant pled guilty in federal court to transporting MDMA. He was subsequently sentenced to 140 months imprisonment, with six years supervised probation upon release. By |aamended bill of information, on October 13, 2009, the state charged the defendant with Count 1 — Possession of Ecstasy with intent to distribute, Count 2— Conspiracy to distribute Ecstasy, and Count 3 — Aggravated flight from an officer.
Jury selection for trial on the state charges began and was completed on March 8, 2010. On March 9, 2010, before trial started, the state tendered Dubose a plea offer in which he would plead guilty to Count One with a 10-year sentence to be served consecutively to his existing federal sentence of 140 months, with Counts Two and Three to be nolle prossed. However, the trial court rejected the plea agreement, stating:
My thought is this and I — I appreciated where each side is coming from, but we’ve gone this far to pick a jury and my position would be to plead guilty with a PSI which means there are no caps. Or we can go on through the trial.
After a sidebar conference, Dubose expressed his desire to plead guilty to all three counts. The state responded that it would agree only not to file a habitual offender bill. The court advised Dubose of his Boykin[1] rights. The court read the sentencing range for each count, ordered a PSI, and stated that there would be no sentencing cap. In addition, the court advised Dubose of the possibility of receiving 47 years to be served consecutively to his federal sentence.
Dubose’s sentencing hearing was held on August 31, 2010. The court noted Du-bose’s potential status as a fourth-felony offender and the facts of his present crimes as aggravating factors. The court recited Dubose’s prior convictions:
14* three separate arrests for trespassing in 1995;
• a 1995 conviction of possession of cocaine;
• a 1996 conviction of possession of cocaine with intent to distribute;
*616 • a 2000 conviction of possession of cocaine;
• three misdemeanor arrests and three more felony charges in 2003;
• a 2007 conviction of DWI (first offense) and possession of cocaine.
The court stated that there was an undue risk that Dubose would commit another crime during the period of suspended sentence or probation, and noted that Du-bose was not eligible for a probated sentence “due to his prior felony convictions and prior revocation.” The court observed that Dubose had engaged in a high-speed car chase and knowingly created a risk of death or great bodily harm to more than one person; the court stated that it found La. C. Cr. P. art. 894.1(A)(1), (A)(2), (A)(3) and (B)(5) applicable.
The court considered the following mitigating factors:
• Dubose was raised by a single mother and had no contact or financial support from his father;
• his brother was killed in a car accident in 1991;
• he is a high-school dropout;
• he worked as a cook for three to four years;
• he has two young sons by two different women, with whom he has a good relationship;
• he began experimenting with drugs at a young age;
• he expressed remorse for his decisions;
• he is now drug-free, has given his life to Christ, and | fidesires to be a positive role model in his sons’ lives; and
• letters from Dubose’s family and friends.
The court characterized Dubose as more than a mere drug user, but “a dealer who has helped bring the scourge of drugs to our community.” The court stated that Dubose had “already been shown leniency” by the state when it offered to enter into this plea agreement and that Dubose had several additional charges pending that had been dismissed, including: possession of marijuana with intent to distribute; another possession of marijuana with intent to distribute; one count of possession of cocaine with intent to distribute as a second offense; and, possession of cocaine (third offense), DWI (first offense), and failure to wear a seat belt.
The court sentenced Dubose to 30 years and a fine of $10,000.00 for Count One, 15 years for Count Two, and two years for Count Three, with all sentences to be served consecutively at hard labor, without benefit of probation, parole, or suspension of sentence, and with credit for time served. The sentences were also ordered to be served consecutively to Dubose’s existing federal sentence of 140 months. The court noted that it had specifically charged itself with the factors and guidelines of C. ■ Cr. P. art. 883. Finally, the court advised that default time on the fine associated with Count 1 would be 365 days, to be served consecutively.
Dubose’s motion to reconsider sentence was denied on December 18, 2012. This appeal followed.
^DISCUSSION
In his sole assignment of error, Dubose contends that the court erred by imposing an unconstitutionally harsh and excessive sentence.
Dubose initially points out that the state offered him in exchange for a guilty plea to Count One, a recommended sentence of 10 years without benefits, to be served concurrently with his federal sentence of 140 months, arising from his conviction by guilty plea to the separate federal offense of transporting MDMA based upon the *617 same occurrence as the instant offenses. Because his state offenses arose out of the same transaction and the same course of conduct as his federal offense, he contends that the sentences imposed for the state offenses should not have been ordered to run consecutively with his federal sentence, citing La. C. Cr. P. art. 883 and La. Admin. C. 22:215(A)(2), (C) in support thereof.[2] Dubose asserts also that Counts One and Two were nonviolent offenses.
As his last argument, Dubose reflects on his family and social history. Dubose states that he is a 32-year-old high school dropout who was raised by a single mother, lost his brother to an accidental death, and who began experimenting with drugs at a young age. He has a work history of working as a cook, but explains he succumbed to criminal conduct as a result of his life as a drug addict. Due to his current incarcerated status, Dubose states that he is now a drug-free, Christian man who has secured his GED equivalent and a certificate, and is a positive role model for his sons. Dubose argues that his sentence deprives him of the opportunity of 17becoming truly rehabilitated and one day re-entering society as a productive member. He asserts that his sentence is an example of a purposeless and needless imposition of pain and suffering.
In response to Dubose’s claims, the state adopts the trial court’s reasons for Du-bose’s 47-year sentence and its condition of being served consecutive to his existing federal sentence.
A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,-633 (La.App. 2 Cir. 11/3/10), 55 So.3d 56. The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra.
Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A trial court has broad discretion in sentencing offenders.
 As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 | R(La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App. 2 Cir. 2/13/08), 976 So.2d 802. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App. 2 Cir. 11/3/10), 55 So.3d 90.
The sentencing court may specify that the sentence imposed be served concurrently with a sentence imposed by a federal court or a court of any other state. La. C. Cr. P. art. 883.1. Neither the federal court nor the state district court is required to order its sentence to run concurrently with the other. State v. Hicks, 45,001 (La.App. 2 Cir. 1/27/10), 30 So.3d 1081, 1084, unit denied, 2010-0459 *618 (La.9/24/10), 45 So.3d 1071. See 18 U.S.C. § 3584.
The trial court has discretion to reject a plea bargain, even if the parties are in complete agreement as to its terms. State v. Manchester, 545 So.2d 528 (La.1989), State v. Walker, 32,342 (La.App. 2 Cir. 9/24/99), 747 So.2d 133,140.
Dubose was sentenced to 30 years and a fine of $10,000.00 for Count One, 15 years for Count Two, and two years for Count Three, with all sentences to be served consecutively at hard labor, without benefit of probation, parole, or suspension of sentence, and with credit for time served. The sentencing range for Count One is five to 30 years; for Count Two is a fine or imprisonment that does not exceed one-half of the longest term of imprisonment prescribed for the underlying offense; and for Count Three is a term of imprisonment at hard labor for no more than two years. The length of imprisonment for Dubose’s sentences were imposed within the |9statutory limitations.
We note initially that the trial court acted within its discretion when it rejected the plea agreement and when it imposed consecutive sentences. The trial court had the discretion to reject the plea offer and there is no requirement for state sentences to be imposed concurrent to federal sentences, nor is it mandatory that the state sentences be served concurrently, even though the federal and state offenses arose out of the same transaction; the trial court has authority to take these actions, but it always has discretion to be more lenient. See State v. Manchester, supra; State v. Walker, supra; State v. Hicks, supra; La. C. Cr. P. art. 883.1.2.
The record reveals adequate compliance with La. C. Cr. P. art. 894.1, as. the district court expressly referred to the guidelines and recited the factual considerations relevant to the case. The court cited Dubose’s extensive criminal history dating back to 1995. Most of the crimes were drug-related, although he had arrests for trespassing, resisting, and a DWI. The 4,800 Ecstasy pills in the trunk of his vehicle, his statement that he intended to sell the pills, and the high-speed car chase which created a risk of death or great bodily harm to others were also aggravating factors. Du-bose has had previous opportunities to rehabilitate himself and has not done so; the court was justified in finding that Dubose could not be rehabilitated. The court noted that Dubose was not simply a drug user, but a dealer who has brought the scourge of drugs to the community. In mitigation, the court cited Dubose’s family and social history.
lioWe conclude that there has been no showing that the court committed a manifest abuse of discretion in imposing a 47-year sentence to be served consecutively to Dubose’s federal sentence. Although the sentence is harsh, Dubose received the benefit of the state’s agreement not to file a habitual offender bill.
We note, however, that La. R.S. 14:108.1 (aggravated flight from an officer) does not authorize a sentence to be imposed without benefit of parole, probation, or suspension of sentence. We therefore amend the two-year sentence for aggravated flight from an officer by removing the prohibition on parole, probation, or suspension of sentence. In all other respects, the conviction and sentence are affirmed.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence as amended.
CONVICTION AND SENTENCE AFFIRMED AS AMENDED.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. La. Admin. Code 22:215(A)(2), (C) does not exist.